## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Thelma Victoria Johnson, | ) | C/A No. 0:16-1317-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill, Acting Commissioner | ) | |
| of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Thelma Victoria Johnson, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Child's Insurance Benefits ("CIB")[2] and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the named defendant because she became the Acting Commissioner of Social Security on January 23, 2017.

[2] To be entitled to CIB, the claimant must have a disability that began before reaching age twenty-two. 20 C.F.R. § 404.350(a)(5). In this case, Johnson had not reached the age of twenty-two by her amended alleged onset date.

PJG

is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform her past relevant work; and

(5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v.

---

[3] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).

<u>Califano</u>, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. <u>Grant v. Schweiker</u>, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In February 2012, Johnson filed for CIB and SSI, alleging disability beginning January 1, 2003. Johnson's applications were denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on October 3, 2014, at which Johnson, who was represented by Harry F. Smithson, Esquire, appeared and testified. At the hearing, Johnson amended her alleged disability onset date to December 11, 2007. After hearing testimony from Johnson's father and a vocational expert, the ALJ issued a decision on December 19, 2014 finding that Johnson was not disabled prior to May 1, 2012, but became disabled on that date and continued to be disabled through the date of the decision. (Tr. 109-27.)

Johnson was born in 1986 and had not attained the age of twenty-two as of December 11, 2007—the amended alleged onset date. She has a college education and has no prior work experience. (Tr. 228.) Johnson alleged disability due to cerebral palsy, neck pain, back pain, shoulder pain, headaches, hand trembles, muscle spasms in lower back and shoulders, segmental dystonia, restless leg syndrome, and asthma. (Tr. 227.)

In applying the five-step sequential process, the ALJ found that Johnson had not engaged in substantial gainful activity since December 11, 2007—her amended alleged onset date. The ALJ also determined that, prior to the date Johnson attained age twenty-two, Johnson's cerebral palsy, cervical dystonia, asthma, and a learning disability were severe impairments. However, the ALJ found that, prior to attaining age twenty-two and through and until Johnson became disabled on May 1, 2012, Johnson did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, prior to attaining age twenty-two and through and until Johnson became disabled on May 1, 2012, Johnson retained the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant is able to perform frequent reaching, handling, fingering and feeling and occasional pushing, pulling and postural activities but no climbing of ladders, ropes or scaffolds; she must avoid concentrated exposure to respiratory irritants and extreme temperatures; and she has the mental capacity to perform unskilled work.

(Tr. 116.) The ALJ found that Johnson had no past relevant work but that, prior to May 1, 2012, considering Johnson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Johnson could have performed. Therefore, the ALJ found that Johnson was not disabled at any time prior to March 19, 2008—the date she attained age twenty-two. However, the ALJ found that, beginning on May 1, 2012, the severity of Johnson's impairments was sufficient to meet Listing 11.07D. Accordingly, the ALJ found that Johnson was not disabled prior to May 1, 2012, but became disabled on that date and continued to be disabled through the date of the decision.

The Appeals Council denied Johnson's request for review on April 18, 2016, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers

PJG

v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Johnson raises the following issues for this judicial review:

I.    The ALJ's determination that Plaintiff was disabled on May 1, 2012, but not earlier, was not explained properly pursuant to the Mandatory Discussion Requirements of Social Security Ruling 96-8p and general principles of substantial evidence.

II.   The ALJ erred in rejecting Plaintiff's credibility and symptoms, pursuant to SSR 96-7p.

(Pl.'s Br., ECF No. 13.)

## DISCUSSION[4]

### A.    Residual Functional Capacity

First, Johnson argues that the ALJ failed to sufficiently explain the residual functional capacity as required by SSR 96-8p and failed to engage in a function-by-function assessment of Johnson's capacities as required by SSR 96-9p. A claimant's residual functional capacity is "the

---

[4] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed on or after March 27, 2017. See, e.g., 20 C.F.R. §§ 404.1513, 404.1527, 416.913, 416.927. Because the instant claim was filed in 2012, all references in the instant Report and Recommendation are to the prior versions of the regulations in effect at the time Johnson's application for benefits was filed, unless otherwise specified.

PJG

most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. Further, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 178, 188 (4th Cir. 2016).

Johnson asserts that there is contradictory evidence in the record. To the extent this argument repeatedly relies on Johnson's assertion that the agency initially found her disabled in 2008 (immediately after Johnson attained the age of twenty-two) and later reversed that determination, the record actually appears to indicate that on a prior SSI application Johnson was awarded "presumptive disability" benefits, which are defined as benefits that may be paid for no more than six months pending a formal finding of whether or not a claimant is disabled. 20 C.F.R. §§ 416.931, 416.932. Thus, the disability benefits that Johnson received for three months in 2008 were not based on a formal disability finding. Rather, a claimant may receive presumptive disability benefits "if the evidence available at the time [the agency] make[s] the presumptive disability . . . finding reflects a high degree of probability that you are disabled . . . ." 20 C.F.R. § 416.933. Further, Social Security "may make findings of presumptive disability . . . in specific impairment categories without obtaining any medical evidence," and one of these categories includes an "allegation of cerebral palsy . . . and marked difficulty in walking (e.g., use of braces), speaking, or coordination of the

PJG

hands or arms."  20 C.F.R. § 416.934(f); see also 20 C.F.R. § 416.933 ("In the case of readily observable impairments (e.g., total blindness), we will find that you are disabled or blind for purposes of this section without medical or other evidence.").  Accordingly, the record appears to indicate that Johnson received presumptive disability benefits in connection with her June 2008 SSI application from August to October 2008, at which time the agency appears to have made a formal initial disability determination finding that Johnson was not disabled.  This denial was affirmed on reconsideration, and was not further appealed.  (Tr. 46, 216-19, 223.)

The other evidence Johnson relies upon consists of the medical findings of neurologists Dr. Frank Pusey and Dr. Lawrence Mauldin.  Specifically, Johnson states that Dr. Mauldin's clinical examination in April 2002 "showed right facial palsy, hyperactive reflexes, ataxia, and dysarthria (which is imperfection of speech articulation due to disturbances in muscular control, resulting from damage to the central nervous system)," and "Dr. Mauldin's impression was progressive right facial palsy suggestive of a left brain lesion, although a brain MRI showed no lesions."  (Pl.'s Br. at 6, ECF No. 13 at 6) (citing Tr. 378).  Johnson further states that Dr. Mauldin's records between 2002 and 2004 showed right facial weakness as well as diagnoses of dyslexia, dysgraphia, and ADHD.  (Id.) (citing Tr. 374-76).  Dr. Pusey appears to have treated Johnson from December 2007 through March 2008.  Johnson states that Dr. Pusey's initial and subsequent clinical examinations indicated "spastic gait, slurred and nasal speech, right focal weakness, motor abnormalities in all stations, hyperreflexia in all stations (greater on the right), and choreoathetosis" with diagnoses of cerebral palsy and spastic ataxia.  (Pl.'s Br. at 6-7, ECF No. 13 at 6-7) (citing Tr. 302-03, 297-99).  Johnson also points to Dr. Pusey's indication in March 2008 that Johnson had a severe degree of disability from cerebral palsy.  (Pl.'s Br. at 7, ECF No. 13 at 7) (citing Tr. 295).  However, the ALJ's decision clearly reflects consideration of this evidence among other evidence in the record.  (See, e.g., Tr. 117-18, 123.)

Moreover, a portion of Johnson's arguments essentially ask the court to again analyze the facts and reweigh the evidence presented, contrary to the substantial evidence standard of review that this court is bound to apply at this stage in the proceedings. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

Furthermore, contrary to any argument by Johnson that the ALJ "cherry-picked" the record, the ALJ's decision reflects careful and thorough discussion of the evidence. Also contrary to Johnson's arguments, the decision reflects specific support for the residual functional capacity assessment. For example, the ALJ discussed and weighed Johnson's testimony, supporting testimony from her father, treatment records, and medical opinion evidence. Limitations included in the opinion evidence or testimony that were discounted or rejected by the ALJ were also addressed in this discussion. In summarizing the history of Johnson's treatment, the ALJ observed that the medical evidence showed that Johnson had "longstanding cerebral palsy and cervical dystonia with resulting severe functional limitations during the initial period at issue from December 2007 through the end of April 2012." (Tr. 117.) The ALJ found that the medical evidence warranted and supported "limitation to sedentary exertional work with frequent reaching, handling, fingering and feeling and occasional pushing, pulling and postural activities but no climbing of ladders, ropes or scaffolds." (Id.) The ALJ proceeded to find greater limitations were not warranted before May 2012, citing specific medical evidence to support that finding and observing that Johnson was released from Dr. Pusey's care to follow up as needed, as well as evidence that Johnson graduated from college in 2011 "with requested accommodations only for learning disorder with dyslexia and

dysgraphia and lack of seeking further medical attention from Dr. Pusey or any other neurologist until beginning treatment with Dr. Hammett in January 2011." (Tr. 118.) The ALJ also discussed and summarized treatment records from Dr. David Hammett, a neurologist, observing that the notes indicated "worsening symptoms and declining functional ability in the claimant over time but [did] not support a finding of greater or disabling limitations before May 2012." (Tr. 118.) After summarizing Dr. Hammett's notes, the ALJ concluded that Dr. Hammett's "conservative course of treatment and history of examination findings demonstrating overall intact musculoskeletal and neurological function weigh against finding greater or disabling limitations before May 2012." (Id.) The ALJ evaluated Johnson's allegation of sleepiness, morning grogginess, and daytime drowsiness because of poor sleep at night and medication side effects and found the record suggested "any problems [Johnson] may have had prior to May 2012 were of slight or minimal significance and do not support a finding of greater functional limitation before May 2012." (Tr. 119.) The ALJ continued, finding that the medical evidence supported a "severe pulmonary impairment with asthma complicated by chronic allergic rhinitis and recurring sinusitis," and after summarizing the evidence in support of that finding, determined that "the evidence support[ed] additional limitation with need to avoid concentrated exposure to respiratory irritants and extreme temperatures but otherwise weigh[ed] against finding greater functional limitation before May 2012." (Id.)

The ALJ next discussed the evidence relating to Johnson's learning disability with dyslexia and dysgraphia that manifests in the form of poor handwriting, and Johnson's allegations of problems with concentration. The ALJ observed the accommodations that Johnson received during high school and in college. However, the ALJ also observed the testimony and evidence attributing many of Johnson's alleged limitations to her physical impairments rather than her mental impairments. Thus, the ALJ found that the evidence supported "further limitation of the claimant

PJG

to unskilled work but otherwise weighs against a finding of greater or disabling functional limitation before May 2012." (Tr. 120.) The ALJ continued, specifically stating that he

> considered the argument that the claimant's ability to complete her college studies working at own pace and attending two to three hours of classes daily three to four days per week does not equate to an ability to perform sustained work for eight hours a day, forty hours a week (Exh. 15E). However, the claimant's graduation from high school and earning her college degree are significant in that they demonstrate her intact cognitive capacity to learn new things, write and draw, persist to tasks physically and mentally, and complete tasks and coursework of satisfactory quality as are required to earn a college degree related to graphic design. While the claimant's decision to carry a lesser course load than would be required to complete her college studies in a four-year period gives some support for finding limitations in stamina and endurance, I am not persuaded that decision supports a finding of greater limitations than the above residual functional capacity when weighed against the medical and other evidence.

(Tr. 120-21.) The ALJ also expressly considered Johnson's activities of daily living, her lack of any history of sustained work of any type, the testimony of Johnson's father, and the opinion evidence.

> After discussing all of the above, the ALJ concluded as follows:

> In sum, the above residual functional capacity assessment is supported by the totality of the lay and medical evidence. While the claimant does have multiple severe impairments that include cerebral palsy and cervical dystonia with symptoms of worsening intensity and scope and increasing limitations in her physical abilities over time, the contentions that these have reached a disabling degree of severity are not supported prior to May 2012. I have carefully read and considered all the evidence of record, regardless of whether it is specifically cited in the decision, and find the above residual functional capacity more consistent with the claimant's specific objective medical findings, course of treatment, collegiate studies and the overall evidence in the record than with the allegations of greater or disabling limitations.

(Tr. 124.)

Review of the ALJ's opinion as a whole reflects that he sufficiently explained Johnson's residual functional capacity assessment and the basis for the limitations and restrictions included.[5] Similarly, the court finds unavailing Johnson's argument that the ALJ erred in failing to perform a function-by-function analysis in determining Johnson's RFC. In this case, and unlike in <u>Mascio</u>, Johnson has not directed the court to conflicting evidence that the ALJ did not address, and the court is not "left to guess about how the ALJ arrived at his conclusions on [Johnson's] ability to perform relevant functions."[6] <u>Mascio</u>, 780 F.3d at 637. Based on all of the foregoing, the court finds that Johnson has failed to demonstrate that the ALJ's residual functional capacity assessment is unsupported by substantial evidence or controlled by an error of law.

**B.    Subjective Complaints**

Johnson also challenges the ALJ's evaluation of her subjective complaints of pain. With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated

---

[5] To the extent that Johnson's arguments in this section may be construed as challenging the ALJ's evaluation of the medical opinion evidence, the court finds that the decision reflects that the ALJ applied the relevant factors in evaluating the opinion evidence and that Johnson has failed to demonstrate that the ALJ's evaluation of these opinions is unsupported by substantial evidence or based on an incorrect application of the law. <u>See</u> 20 C.F.R. §§ 404.1527(c), 416.927(c); <u>Mastro</u>, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); <u>Dunn v. Colvin</u>, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted). To the extent that Johnson's arguments are directed at the ALJ's evaluation of her subjective complaints or the evaluation of her father's testimony, those arguments are addressed below. <u>See</u> <u>infra</u> Sections B & C.

[6] The court notes that in her reply brief, Johnson challenges the support for the ALJ's residual functional capacity assessment because it would be unusual for a claimant with a condition that "declines slowly" to go from being not disabled to meeting a listing. However, this suggestion is insufficient to render the ALJ's residual functional capacity assessment unsupported.



that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.[7] "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595.

---

[7] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029. See 2016 WL 1237954 (correcting the effective date of SSR 16-3p to read March 28, 2016). Because this application was adjudicated prior to the effective date of SSR 16-3p, the court analyzes Baldwin's allegations under SSR 96-7p. See Best v. Berryhill, No. 0:15-cv-02990-DCN, 2017 WL 835350, at *4 n.3 (Mar. 3, 2017) (applying SSR 96-7p under the same circumstances). Regardless, the court observes that SSR 16-3p discontinues use of the term "credibility," but "the methodology required by both SSR 16-3p and SSR 96-7, are quite similar. Under either, the ALJ is required to consider [the claimant's] report of his own symptoms against the backdrop of the entire case record." Id. (alteration in original) (quoting Sullivan v. Colvin, Civil Action No. 7:15-cv-504, 2017 WL 473925, at *3 (W.D. Va. Feb. 3, 2017)); see also Keaton v. Colvin, No. 3:15CV588, 2017 WL 875477, at *6 (E.D. Va. Mar. 3, 2017) ("Effective as of March 28, 2016, SSR 16-3p superseded SSR 96-7p. SSR 16-3p effectively removes the use of the term "credibility" but does not alter the substantive analysis.").

A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)     Your daily activities;
(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ summarized Johnson's allegations as follows:

The claimant alleges disability due to both physical and mental impairments. The claimant primarily alleges disability due to cerebral palsy with dystonia characterized by problems with torticollis, involuntary spastic movements and trembling, painful muscle spasms, and diminished coordination and strength. She specifically alleges limitation due to spastic gait and dragging of her right leg, as well as problems with dropping things and with using her hands for grasping and fine manipulation. She alleges waxing and waning problems with speech. Despite benefitting from medical treatment, the claimant alleges the foregoing symptoms and limitations preclude performing even sedentary exertional work over the course of a full eight-hour work day or forty hour work week and that she is only able to sustain activity for a couple of hours at most. (Exh. 2E; 4E-5E; 7E; 10E-12E; 15E; and Hrg.). The claimant also alleges impaired mental functioning due to learning disability with dyslexia and dysgraphia, problems maintaining concentration, and an inability to sustain college studies without allowance to work at her own pace taking a limited course load each semester (Exh. 15E; and Hrg.). The claimant further alleges being generally limited by symptoms from and treatment for chronic rhinitis and sinusitis with acute episodes of flare-up, and asthma attacks occurring five to six times per month triggered by



exposure to environmental triggers like smoke. She also alleges impairment due to recurrent headaches, including migraine headaches, that occur as often as an average of three to four days per week, for which she takes prescribed medication and must lie down in a dark place for thirty minutes before the medication takes effect. (Exh. 2E; 4E; 7E; 11E-l3E; 15E; and Hrg.). In addition, the claimant alleges that a combination of poor sleep at night due to pain and neuromuscular dysfunction waking her from sleep at night and problems with sedating side effects in the daytime from treatment with prescribed medications causes her to need naps of sixty to ninety minutes during the day (Exh. 4E/p. 4; 7E/p. 3; 15E; and Hrg.).

(Tr. 116-17.)

The ALJ found that Johnson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely credible prior to attaining age 22 or prior to May 1, 2012 based on the record in this case. (Tr. 117.) In support of this finding, the ALJ specifically addressed the medical evidence with regard to each of Johnson's impairments, and whether support existed for particular limitations stemming from these impairments. See discussion supra Section A. The ALJ observed Johnson's

ongoing college studies through graduation in 2011 with requested accommodations only for learning disorder with dyslexia and dysgraphia and lack of seeking further medical attention from Dr. Pusey or any other neurologist until beginning treatment with Dr. Hammett in January 2011 further weigh against a finding of greater or disabling functional limitations due to cerebral palsy or cervical dystonia prior to May 2012 (Exh. 15E; 2F/p. 9; 3F/p. 5-8; 4F; 6F; and Hrg.).

(Tr. 118.) The ALJ also observed that Johnson "was followed and treated by her allergist, Roy Douglass Markham, M.D., during that time. However, Dr. Markham's records lack any documentation of observations or findings of any musculoskeletal or neurological abnormalities to support a finding of greater or disabling functional limitations at any time from December 2007 through May 2012. (Exh. 7F; and 14F)." (Id.) Further, as stated above, the ALJ addressed Johnson's ability to perform sustained work for eight hours a day, forty hours a week. The ALJ also

PJG

observed that although Johnson's symptoms and limitations were progressively worsening and she continued to live with her father, she continued to engage in various activities of daily living. The ALJ found that although Johnson testified that she needed "extra time to complete household chores, the type and scope of her activities and demonstrated ability to attend classes three to four days per week while working toward her college degree is more consistent with the above residual functional capacity prior to May 2012 than with allegations of greater functional limitation." (Tr. 121.) The ALJ also addressed Johnson's lack of any history of sustained work of any type, observing that Johnson filed the current disability applications soon after completing her college degree and did not attempt work of any type before or after filing her applications. The ALJ stated that he was "not persuaded that the claimant's work history supports finding a greater degree of functional limitation than the above residual functional capacity when weighed against the evidence of record taken as a whole, particularly the medical evidence." (Id.)

The ALJ also considered and weighed the testimony of Johnson's father as well as the other opinion evidence, including opinions from the state agency medical and psychological consultants. The ALJ gave little weight to the "March 2008 report from a treating neurologist, Dr. Pusey, opining the claimant's cerebral palsy was 'severe,' as opposed to 'mild' or 'moderate' (Exh. 2F/p. 1; and 15F)" and explained the basis for that conclusion. (Tr. 123.) The ALJ found "the request of a treating pediatrician, William Taylor, M.D., that the claimant be allowed 'appropriate accommodations' on examinations and paper assignments in view of her diagnoses of dyslexia and dysgraphia while attending South University in 2008 (Exh. 4F)" was "too vague, ambiguous and lacking in detail to support a finding of greater restriction (Exh. 4F), and his treatment records ending almost five years earlier in January 2004 (Exh. 2F) are not probative of the claimant's residual functional capacity during the immediate period at issue from December 2007 to May 2012." (Tr.

123.)  The ALJ also discussed Dr. Hammett's reports and, based on the record, gave them little weight prior to May 2012.

Johnson attempts to challenge some of the reasons offered by the ALJ.  Johnson argues that the ALJ erred in failing to discuss Johnson's reasons for the lack of treatment between 2008 and 2011, arguing that Dr. Pusey felt there was nothing further that could be done for Johnson.  She also argues that the ALJ failed to liken Johnson's situation in school to an unsuccessful work attempt.  However, the ALJ's decision repeatedly reflects that Johnson received accommodations in completing her college degree and the ALJ's evaluation of these accommodations.  Johnson has failed to show how completion of a college degree under these circumstances should be considered an unsuccessful work attempt.  Further, contrary to Johnson's arguments, the ALJ's decision explicitly acknowledges Johnson's testimony regarding the frequency of her daily activities.

Upon careful consideration of Johnson's arguments and the record in this matter, the court finds that Johnson has failed to demonstrate that the ALJ's evaluation of Johnson's subjective complaints is unsupported by substantial evidence or controlled by an error of law.  See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).  Moreover, Johnson has failed to demonstrate that the ALJ failed to properly apply the relevant factors in evaluating her subjective complaints.  See 20 C.F.R. §§ 404.1529(c)(3),

PJG

416.929(c)(3). In fact, the ALJ's decision reflects that he carefully considered the requisite factors in evaluating Johnson's credibility throughout the decision.

Further, while Johnson may point to selective medical evidence in the record in support of her argument, such evidence does not render the ALJ's decision unsupported. Even accepting Johnson's arguments regarding why she did not seek treatment from 2008 through 2011 as true, the court finds that this argument does not render the ALJ's decision unsupported in light of all the reasons offered by the ALJ. As stated above, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

## C.    Lay Evidence

Finally, Johnson argues that the ALJ erred in evaluating lay evidence from Johnson's father. In addition to evidence from acceptable medical sources, the ALJ "may" use evidence from other non-medical sources, such as evidence from spouses, parents, and friends, to show the severity of a claimant's impairment(s) and how it affects his or her ability to work. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); SSR 06-03p, 2006 WL 2329939, at *2. "[I]nformation from [non-medical sources] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function[;]"

PJG

however, in considering evidence from these sources, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *2, *6.

In this case, the ALJ stated the following regarding Johnson's father:

Pursuant to SSR 06-03p, I have considered testimony from the claimant's father, Floyd Johnson. Mr. Johnson testified the claimant has had problems with involuntary leg spasms, spastic gait and head movements all her life that have worsened and that she has developed problems with tremors and stiffness in her hands and dropping things, such as silverware, over the past eight years that have also worsened. He also testified that she has problems with stamina, poor tolerance for stress, muscle problems when working for more than an hour to two, and often needs breaks for rest. He testified that she naps for at least one hour daily due to the combined effects of problems with her muscles and the sedating effect of her prescribed medications. (Hrg.). By virtue of Mr. Johnson's relationship as the father of the claimant, he cannot be considered a disinterested third party whose report would not tend to be colored by affection and a natural tendency to accept and agree with her alleged limitations. While Mr. Johnson's testimony may fairly describe the claimant's level of function during some or all of the period since May 2012, I am not persuaded that his testimony warrants finding a more restrictive residual functional capacity during the period between December 2007 and May 2012 when considered in light of the claimant's own representations and descriptions of her problems, daily activities, and work history, particularly when weighed against the medical evidence.

(Tr. 121.) Johnson argues that the ALJ erred in rejecting Mr. Johnson's testimony simply because he is Johnson's father; however, the ALJ's decision reflects that that was not the sole reason he discounted Mr. Johnson's testimony regarding the period before May 2012. Moreover, SSR 06-03p explicitly provides that the witness's relationship is a factor that may be considered. In this case, the ALJ's decision reflects that he applied the requisite factors in evaluating Mr. Johnson's testimony and explained the basis for finding that it may fairly describe Johnson's level of functioning for some or all of the period after May 2012. Thus, remand is not warranted on this allegation of error.

**ORDER**

For the foregoing reasons, the court finds that Johnson has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 27, 2017
Columbia, South Carolina